**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN,**
**GREEN BAY DIVISION**

| | | |
|---|---|---|
| CITY OF MANITOWOC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NEWELL BRANDS INC. AND NEWELL OPERATING COMPANY, | ) | |
| | ) | Case No. 1:26-cv-00826 |
| Defendants, Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| E.J. SPIRTAS MANITOWOC, LLC AND E.J. SPIRTAS GROUP LLC, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF THIRD-PARTY DEFENDANTS E.J. SPIRTAS MANITOWOC, LLC AND E.J. SPIRTAS GROUP LLC'S MOTION TO DISMISS**

COME NOW Third-Party Defendants E.J. Spirtas Manitowoc, LLC ("E.J. Spirtas Manitowoc") and E.J. Spirtas Group LLC ("E.J. Spirtas Group") (collectively, "Third-Party Defendants"), by and through undersigned counsel, and, pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby submit this Memorandum of Law in Support of their Motion to Dismiss.

## INTRODUCTION

This case concerns environmental conditions at a former industrial manufacturing property that Mirro Aluminum Company ("Mirro") and its predecessors allegedly operated for more than a century at 1512 Washington Street, Manitowoc, Wisconsin (the "Property"). The City of Manitowoc (the "City") sued Newell Brands Inc. and Newell Operating Company (collectively, "Newell") under Wis. Stat. § 292.33, alleging that Newell is Mirro's successor in interest and that Mirro caused and contributed to significant environmental impacts at the Property. Newell, in turn, filed a Third-Party Complaint seeking to impose CERCLA and Wisconsin contribution liability upon Third-Party Defendants, including E.J. Spirtas Manitowoc, a subsequent owner that acquired the Property in 2006.

Newell attempts to shift liability for environmental contamination at property it formerly owned and operated for decades. Newell asserts claims under CERCLA §§ 107(a) and 113(f), as well as state-law contribution claims, seeking to recover costs it allegedly incurred investigating the Property. Newell's Third-Party Complaint fails as a matter of law for four independent reasons.

First, Newell seeks the incompatible remedies of joint and several liability under CERCLA § 107(a) while simultaneously requesting equitable allocation of costs, remedies that are mutually exclusive under controlling Seventh Circuit precedent. Second, Newell cannot invoke an implied § 113(f) contribution right because the City sued Newell under Wisconsin state law, not CERCLA, and *Cooper Industries* forecloses contribution claims absent a predicate CERCLA enforcement action. Third, Newell fails to plead any plausible causal link between specific response costs it allegedly incurred and any specific conduct by Third-Party Defendants. Fourth, the City acquired the Property in 2016 through condemnation proceedings, and many of the costs Newell seeks to shift arose after the City's acquisition and control of the site. Third-Party Defendants cannot be responsible for those post-acquisition costs.

Newell does not plausibly allege that the costs it seeks from Third-Party Defendants were incurred because of releases occurring during E.J. Spirtas Manitowoc's ownership of the Property. The Third-Party Complaint alleges that Newell retained Ramboll after receiving a 2018 WDNR Responsible Party Letter and that Newell incurred more than $700,000 in investigation costs. But Newell does not identify which investigation costs were allegedly caused during E.J. Spirtas Manitowoc's ownership of the Property, and which investigation costs were due to preexisting Mirro contamination, and finally which investigation costs were caused by post-acquisition conditions under the City's control, or how any alleged particular release during E.J. Spirtas Manitowoc's ownership necessitated any particular expenditure.

That omission is significant because Newell's own exhibits document environmental conditions existing before E.J. Spirtas Manitowoc acquired the Property. The 2003 assessment describes visible staining throughout the facility and exposed fill beneath wooden floors saturated with oil. The later materials identify containers and apparent PCB transformer fluid during E.J. Spirtas Manitowoc's ownership, but the mere presence of hazardous materials at the Property does not plausibly establish that all of Newell's investigation costs, or all of the City's remediation and redevelopment costs, resulted from releases occurring during E.J. Spirtas Manitowoc's ownership of the Property.

Newell cannot rely on *United States v. Atlantic Research Corp.* to excuse these fatal pleading deficiencies. 551 U.S. 128, 139 (2007). That decision recognizes that a potentially responsible party ("PRP") may bring a § 107(a) claim for costs the PRP itself incurred, but § 107 still limits recovery to necessary response costs incurred because of a release or threatened release. *Id. Atlantic Research* distinguishes direct costs from reimbursement and contribution. It does not permit a plaintiff to aggregate costs associated with distinct contamination, distinct ownership

periods, and distinct response activities without plausibly connecting the claimed costs to a release for which the defendant is allegedly responsible.

The Third-Party Complaint fails to state a claim against Third-Party Defendants upon which relief can be granted, and thus the Third-Party Complaint should be dismissed in its entirety.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint plead "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead facts to "state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is plausible where a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016). While the court accepts all well-pleaded factual allegations as true, it need not credit "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014), quoting *Iqbal*, 556 U.S. at 678. A complaint must contain "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief. *Virnich v. Vorwald*, 664 F.3d 206 (7th Cir. 2011). Factual allegations must be enough to raise a right to relief above the speculative level. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008).

Fundamentally, a plaintiff must "provid[e] some specific facts" to support the legal claims asserted in the complaint and must allege "enough details about the subject-matter of the case to

present a story that holds together." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

## ARGUMENT

### I. NEWELL CANNOT SIMULTANEOUSLY SEEK JOINT AND SEVERAL LIABILITY AND EQUITABLE ALLOCATION OF RESPONSE COSTS.

Newell's Third-Party Complaint seeks incompatible forms of relief that are mutually exclusive under CERCLA. In Count One, Newell invokes CERCLA § 107(a)(4)(B) and requests a declaratory judgment that Third-Party Defendants are "jointly and severally liable" for all response costs Newell has incurred. (ECF No. 12 at 11). Yet in Count Two, Newell simultaneously requests that the Court "determin[e] the percentage share of equitable responsibility attributable to each Third-Party Defendant" and allocate costs "using such equitable factors as the Court deems appropriate." (*Id.* at 12). This attempt to pursue both joint and several liability and equitable allocation under the same claim is legally impermissible.

The Seventh Circuit has recognized that CERCLA §§ 107(a) and 113(f) provide two “clearly distinct” remedies with different purposes and liability frameworks. *NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 690 (7th Cir. 2014) (quoting *United States v. Atlantic Research Corp.*, 551 U.S. 128, 138 (2007)). A § 107(a) action permits recovery of costs directly incurred by the plaintiff, whereas § 113(f) authorizes equitable allocation of common liability among responsible parties. *Id.* at 690-91 (7th Cir. 2014); *Atlantic Research Corp.*, 551 U.S. at 138-39. Under § 107(a), liable parties are subject to joint and several liability unless they can prove divisibility. *Von Duprin LLC v. Major Holdings, LLC*, 12 F.4th 751, 763 (7th Cir. 2021). Joint and several liability is "the norm for PRPs under § 107(a)," and "[t]he exception is divisible liability—commonly called apportioned liability—where liability is assigned to PRPs according to the portion of the underlying environmental harm each caused." *Id.* at 759.

In contrast, § 113(f) contribution actions are "governed by Federal law" and authorize courts to "allocate response costs among liable parties using such equitable factors as the court determines are appropriate." *NCR Corp.*, 768 F.3d at 695. In a contribution action, "the court is not concerned with deciding whether a party is liable under CERCLA" because "[t]hat is a question for the enforcement action; the contribution action merely imports its conclusions." *Id*. The district court's authority in contribution actions is "broad and loose," and "CERCLA not only entrusts the district court to make the ultimate equitable allocation of costs, but it also grants the court the authority to decide which equitable factors will inform its decision in a given case." *Id*.

These remedies are distinct, and "apportioned (divisible) liability and allocated liability are not one and the same under CERCLA." *Von Duprin*, 12 F.4th at 759. Apportioned liability is "imposed on the basis of principles of causation," while allocated liability is "the product of an application of equitable factors." *Id*. A plaintiff cannot pursue both simultaneously.

Here, Newell expressly seeks a declaration of "joint and several" liability under § 107(a) yet also asks this Court to conduct the equitable allocation analysis reserved for § 113(f) contribution actions by determining "percentage share[s] of equitable responsibility" and applying "equitable factors." This inconsistency renders Newell's claims contradictory and legally unsustainable. Newell has not alleged facts showing entitlement to a § 113 remedy and therefore cannot seek equitable allocation under the circumstances alleged. It cannot pursue both joint and several liability and equitable allocation. Because the Third-Party Complaint invokes both incompatible frameworks, it fails to state a viable claim.

## II. NEWELL CANNOT ASSERT AN IMPLIED § 113(f) CONTRIBUTION CLAIM.

Newell cannot recast its claims as contribution because it has not been sued under CERCLA § 106 or § 107(a), as § 113(f)(1) requires. In *Cooper Industries v. Aviall Services*, the Supreme

Court held that § 113(f)(1) permits contribution only "during or following any civil action" under CERCLA § 106 or § 107(a). 543 U.S. 157, 166 (2004). Section 113(f)(1)'s saving clause does not create a broader contribution right. *Id*. at 167. It only preserves any independent contribution right that may exist within the CERCLA statute. *Guam v. United States*, 593 U.S. 310, 316 (2021).

Similarly, Section 113(f)(3)(B) is also unavailable. It applies only when a party has resolved CERCLA liability to the United States or a State through an administrative or judicially approved settlement. *Id*. at 315. The Supreme Court has made clear that only a settlement resolving CERCLA liability can trigger contribution under § 113(f)(3)(B). *Id.* at 320.

Here, the City sued Newell under Wisconsin law, specifically Wis. Stat. § 292.33, not CERCLA. The City's Complaint does not invoke CERCLA § 106 or § 107(a), and Newell has not resolved CERCLA liability through any qualifying settlement. Newell therefore cannot satisfy the statutory trigger for contribution under either § 113(f)(1) or § 113(f)(3)(B).

The Seventh Circuit applies this rule consistently. A plaintiff subject to a CERCLA enforcement action or settlement that resolves CERCLA liability must proceed under § 113(f) and may not recover under § 107(a). *NCR Corp.*, 768 F.3d at 690-691. Conversely, without a CERCLA enforcement action or qualifying settlement, a party seeking contribution has no viable § 113(f) claim. The predicate CERCLA action defines the boundary between cost recovery and contribution.

Newell's Third-Party Complaint acknowledges that the underlying lawsuit was brought under Wis. Stat. § 292.33. Because Newell has not been subjected to a CERCLA enforcement action, its attempt to invoke contribution principles fails as to both Third-Party Defendants whether framed expressly under Count Two or implied through its request for equitable allocation. *Cooper Industries* forecloses that theory when it declared if there is no CERCLA enforcement action or

settlement that resolves CERCLA liability, then there is no viable § 113(f) claim. 543 U.S. 157, 166 (2004).

## III. E.J. SPIRTAS GROUP IS NOT A COVERED PERSON UNDER CERCLA § 107(a).

CERCLA § 107(a) identifies four categories of potentially liable persons: (1) the current owner or operator of a facility; (2) a person who owned or operated the facility at the time hazardous substances were disposed of; (3) a person who arranged for the disposal or treatment of hazardous substances; and (4) a person who accepted hazardous substances for transport to a disposal or treatment facility selected by that person. 42 U.S.C. § 9607(a)(1)–(4). A complaint must plead facts plausibly placing each defendant within at least one statutory category.

The Third-Party Complaint does not plausibly allege that E.J. Spirtas Group falls within any of the four categories. E.J. Spirtas Group is not the current owner or operator of the Property and has never owned the Property. The Third-Party Complaint likewise does not allege facts showing that E.J. Spirtas Group operated or controlled the Property, arranged for disposal or treatment of hazardous substances at the Property, or accepted hazardous substances for transport. Collective references to the "Third-Party Defendants" do not supply the defendant-specific facts required by Fed. R. Civ. P. 8 and *Twombly*.

*United States v. Bestfoods* confirms that corporate affiliation alone does not create CERCLA liability. 524 U.S. 51, 61–64 (1998). A parent or affiliated corporation is not derivatively liable for a subsidiary's acts unless the corporate veil may be pierced. *Id*. at 62–63. Nor is an affiliate directly liable as an "operator" unless it "manage[s], direct[s], or conduct[s] operations specifically related to pollution," including hazardous-waste disposal or environmental compliance. *Id*. at 66–67. The inquiry concerns the corporation's relationship to the facility itself, not merely its relationship to another corporate entity. *Id*. at 68.

Newell pleads no facts supporting either theory. It does not allege facts justifying disregard of the separate legal existence of E.J. Spirtas Group and E.J. Spirtas Manitowoc. It also does not allege that E.J. Spirtas Group managed, directed, or conducted operations at the Property, much less operations specifically related to pollution, hazardous-waste disposal, or environmental compliance. The allegations concerning ownership, the Raze Order, and the transfer to the City concern E.J. Spirtas Manitowoc, not E.J. Spirtas Group.

Because Newell does not plausibly allege that E.J. Spirtas Group was an owner, operator, arranger, or transporter under § 107(a), the CERCLA claims against E.J. Spirtas Group fail as a matter of law. Any contribution claim against E.J. Spirtas Group also fails because contribution is available only from a party that is itself liable or potentially liable under CERCLA. The Third-Party Complaint should therefore be dismissed as to E.J. Spirtas Group.

## IV. NEWELL FAILS TO PLAUSIBLY CONNECT SPECIFIC RESPONSE COSTS TO SPECIFIC CONDUCT BY EITHER THIRD-PARTY DEFENDANT.

To state a claim for cost recovery under CERCLA § 107(a), a plaintiff must prove the following elements: "(1) the site in question is a 'facility' as defined by CERCLA; (2) the defendant is a 'responsible person' for the spill as defined by CERCLA; (3) there was a release of hazardous substances; and (4) such release caused the Plaintiff to incur response costs." *Forest Park Nat'l Bank & Tr. v. Ditchfield*, 881 F. Supp. 2d 949, 977 (N.D. Ill. 2012). The causation element requires a plaintiff to plead facts plausibly showing that the defendant's release caused the plaintiff to incur the specific costs it seeks to recover. Similarly, both of Newell's state law contribution claims (Count Three and Count Four) necessarily require Newell to prove that Third-Party Defendants contributed to the contamination, otherwise there could not be joint liability for which contribution could be sought. *See Gaertner v. Holcka*, 219 Wis. 2d 436, 444, 580 N.W.2d 271 (1998).

Newell's Third-Party Complaint fails to satisfy this basic pleading standard. While Newell recites that it "has incurred costs to investigate hazardous substances discharged to the environment at the Property due to Third-Party Defendants' acts and omissions", this is a legal conclusion unsupported by any factual detail linking Newell's $700,000 in alleged investigation costs to contamination traceable to E.J. Spirtas Manitowoc's ownership or operations.

The Supreme Court has made clear that "a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. Instead, a plaintiff must provide "enough details about the subject-matter of the case to present a story that holds together." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581 (7th Cir. 2021). Newell has not done so. The Third-Party Complaint does not identify what Newell investigated, where contamination attributable to Third-Party Defendants was found, what response actions Newell undertook in connection with that contamination, or how much Newell spent addressing releases caused by Third-Party Defendants as opposed to releases from the decades of industrial operations by Newell's own predecessors.

Indeed, Newell's own allegations undermine any inference of causation. Newell admits that "Mirro Aluminum Company or predecessor companies operated at the Property beginning in or around 1898" and that Newell's affiliate "owned the Property as of March 26, 2004." The Property had more than a century of industrial use before E.J. Spirtas Manitowoc acquired it in 2006. Newell does not plead facts demonstrating that the costs it incurred investigating the Property were caused by contamination attributable to either Third-Party Defendant, rather than contamination from Newell's own decades of operations or those of other prior owners.

The Seventh Circuit has emphasized that to survive a motion to dismiss, a plaintiff must allege facts "supporting the plausibility of its claim, not merely legal conclusions." *Soo Line R.R. Co. v. Conrail*, 965 F.3d 596 (7th Cir. 2020). Where "the absence of [a] crucial factual allegation

doomed the claim under Twombly and Iqbal," dismissal is required. *Id*. Here, the absence of any factual allegation connecting Newell's investigation costs to contamination caused by Third-Party Defendants is fatal to its CERCLA § 107(a) and to both of its state law contribution claims (Count Three and Count Four). Newell's bald assertion of causation, unsupported by specific facts, does not raise a right to relief above the speculative level.

## V. THE THIRD-PARTY COMPLAINT DOES NOT SEPARATE PRE-ACQUISITION FROM POST-ACQUISITION COSTS.

A substantial portion of the costs Newell seeks to shift to Third-Party Defendants arose after the City acquired control of the Property through condemnation proceedings. The Third-Party Complaint alleges that the City issued a "Raze Order" to E.J. Spirtas Manitowoc on June 26, 2015, because the Property had "become dilapidated and out of repair." (ECF No. 12 at 42). The Raze Order warned that if E.J. Spirtas Manitowoc failed to comply, "the complex shall be razed and removed and the site restored to a dust-free and erosion-free condition by the City and the cost of such razing, removal and restoration shall be charged against the property, shall be a lien thereon, and may be assessed and collected as a special tax." (*Id.*, ¶ 43).

The Third-Party Complaint alleges that E.J. Spirtas Manitowoc did not comply with the Raze Order, and the City acquired the Property in 2016 through a condemnation action. (*Id.*, ¶ 45). It also alleges that following the City's acquisition, the City "itself, completed demolition activities at the Property." (*Id.*, ¶ 46). The City's underlying Complaint seeks to recover costs "in investigating, remediating, and redeveloping the Property", and alleges it "has incurred at least $5,899,904.89 in necessary and reasonable costs related to investigating contamination, planning and implementing remedial actions, conducting remediation to restore the Property for its intended future use, and engineering fees for administering these tasks." (*Id.*, ¶¶ 7, 53).

The Third-Party Complaint does not identify which of, if any, Newell's alleged $700,000 in investigation costs were incurred before the City's 2016 acquisition versus after the City assumed ownership and control. To the extent Newell seeks to recover costs incurred after the City's acquisition, those costs cannot be attributed to Third-Party Defendants. Once the City acquired the Property and assumed control of remediation and demolition activities, any subsequent investigation or response costs were incurred as a result of the City's own decisions and actions, not as a result of acts or omissions by E.J. Spirtas Manitowoc during its prior ownership.

CERCLA permits recovery only for response costs incurred because of a release or threatened release of hazardous substances. Newell does not identify which of its alleged costs were incurred before the City acquired the Property, which costs were incurred thereafter, or how any specific expenditure was necessitated by a release attributable to either Third-Party Defendant rather than historic contamination, pre-existing site conditions, or remedial decisions undertaken after the City's acquisition. *See Forest Park Nat'l Bank*, 881 F. Supp. 2d at 977. Newell's failure to differentiate is not a matter for later proof. Where a property has passed through multiple owners and the plaintiff seeks an undifferentiated sum, the complaint must allege facts permitting the inference that the defendant's release, rather than another source, necessitated the expenditures claimed. Newell alleges none.

Newell alleges no facts showing that the costs it seeks to recover were incurred in response to releases during E.J. Spirtas Manitowoc's ownership or were caused by either Third-Party Defendant. Without factual allegations identifying when Newell's costs were incurred, what activities those costs funded, how those activities relate to contamination attributable to E.J. Spirtas

Manitowoc's ownership period, or that any costs were incurred because of either Third-Party Defendant, Newell has not stated a plausible claim for relief.

**CONCLUSION**

For the foregoing reasons, Third-Party Defendants E.J. Spirtas Manitowoc, LLC and E.J. Spirtas Group LLC respectfully request that this Court grant their Motion to Dismiss and dismiss the Third-Party Complaint with prejudice.

Dated this 7th day of August 2026.

Respectfully Submitted,
AEGIS Law

By: /s/ Robert L. Devereux
Robert L. Devereux, Mo. Bar No. 32963
601 South Lindbergh Blvd., Second Floor
St. Louis, Missouri 63131
Telephone: (314) 454-9100
Facsimile: (314) 454-9110
rdevereux@aegislaw.com
**Attorney for Third-Party Defendants**

STUART, TOKARZ & POLLARD LLC

By: */s/ Brian C. Tokarz*
Brian C. Tokarz
State Bar No: 1059556
309 N. Water Street, Suite 425
Milwaukee, WI 53202
Telephone: (414) 477-0850
Fax: N/A
btokarz@stpesq.com
**Attorney for Third-Party Defendants**

**CERTIFICATE OF SERVICE**

The foregoing was served via the Court's ECF system on August 7, 2026 on all counsel of record.

/s/ Robert L. Devereux