**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN,**
**GREEN BAY DIVISION**

| | |
|---|---|
| CITY OF MANITOWOC,<br><br>Plaintiff,<br><br>v.<br><br>NEWELL BRANDS INC. AND NEWELL OPERATING COMPANY<br><br>Defendants, Third-Party Plaintiffs,<br><br>v.<br><br>E.J. SPIRTAS MANITOWOC, LLC AND E.J. SPIRTAS GROUP LLC<br><br>Third-Party Defendants. | Case No. 1:26-cv-00826 |

**THIRD-PARTY PLAINTIFFS' RESPONSE IN OPPOSITION TO THIRD-PARTY DEFENDANTS' MOTION TO DISMISS THIRD-PARTY COMPLAINT**

Defendants and Third-Party Plaintiffs Newell Brands Inc. ("NBI") and Newell Operating Company ("NOC" and, together with NBI, "Third-Party Plaintiffs"), by their undersigned counsel, hereby respond in opposition to Third-Party Defendants' E.J. Spirtas Manitowoc, LLC ("Spirtas Manitowoc") and E.J. Spirtas Group LLC ("Spirtas Group" and, together with Spirtas Manitowoc, "TPDs") Motion to Dismiss ("Motion") the Third-Party Complaint (the "TP Complaint").

## INTRODUCTION

TPDs' Motion misconstrues basic law, the facts, and the applicable standard for reviewing a complaint's allegations under a 12(b)(6) motion. In particular, TPDs make five arguments in support of dismissal, none of which has any merit. First and second, TPDs argue that Third-Party

Plaintiffs seek "incompatible remedies" and that *Cooper Industries* forecloses their CERCLA claims. Both arguments misconstrue the claims in the TP Complaint and CERCLA law applicable to claims under § 107(a). Third, TPDs argue that Spirtas Group is not a "covered person" (*i.e.*, a responsible party) under CERCLA. This argument ignores the well-pleaded allegations in the TP Complaint and inappropriately disputes facts, while asking the Court to draw inferences in Spirtas Group's favor. Fourth and fifth, TPDs argue that Third-Party Plaintiffs have failed to prove causation or connect costs to conduct, and that post-acquisition costs cannot be recovered. These arguments also improperly dispute facts and ignore longstanding precedent regarding what is required to be pled concerning causation and regarding the scope of liability that could attach to a former owner or operator of a property.

Due to TPDs' fundamental misconceptions of CERCLA, the Wisconsin common law of contribution, and the standard under which a court reviews the facts alleged in a complaint under Fed. R. Civ. P. 12(b)(6), TPDs' Motion should be denied.

## LEGAL STANDARD

## I. PLEADING STANDARD

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Tamayo v. Blagojevich*, 526 F.3d 1074,1081 (7th Cir. 2008). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff needs to include only "a short and plain statement" of a claim that is plausible on its face and entitles him to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "At the pleadings stage, the complaint need contain only enough factual matter, accepted as true, to allow the reasonable inference that the defendant is liable for the alleged

conduct." *Dyjak v. Lynn*, No. 21-3212, 2022 WL 17101225, at *2 (7th Cir. Nov. 22, 2022) (citing *Iqbal*, 556 U.S. at 678). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

CERCLA does not impose any heightened pleading requirements beyond those set forth in Rule 8. *City of Waukegan v. Nat'l Gypsum Co.*, 587 F. Supp. 2d 997, 1003 (N.D. Ill. 2008) ("CERCLA does not contain any heightened pleading requirements."); *see also City of Waco v. Schouten,* 385 F.Supp.2d 595, 600 (W.D. Tex. 2005). Under notice pleading, a CERCLA plaintiff need only allege facts sufficient to state a plausible claim—it is not required to prove its case at the pleading stage.

## II. CERCLA STANDARD

Substantively, CERCLA provides two complementary but distinct causes of action for private parties seeking to recover environmental response costs. Section 107(a) authorizes a cost recovery action by any person—including a potentially responsible party ("PRP")—that has itself incurred necessary response costs consistent with the National Contingency Plan. *United States v. Atlantic Research Corp.*, 551 U.S. 128, 131-39 (2007); 42 U.S.C. § 9607(a)(4). Under § 107(a), liability is strict, and the default rule is joint and several liability. *Von Duprin LLC v. Major Holdings, LLC*, 12 F.4th 751, 758-59 (7th Cir. 2021); *Burlington N. & Santa Fe Ry. Co. v. United States,* 556 U.S. 599, 613-14 (2009).

The one exception to joint and several liability is that, where a defendant proves that a harm is divisible (*i.e.*, it is possible to differentiate which party is responsible for specific contamination), the court may apportion liability based upon causation. *Id*. When addressing a 107(a) action, § 113(g)(2) requires that the court enter a declaratory judgment "on liability of

response costs . . . that will be binding on any subsequent action . . . to recover further response costs . . . .” 42 U.S.C. § 9613(g)(2).

Section 113(f) of CERCLA, by contrast, authorizes contribution claims among jointly liable PRPs. A § 113(f) action is available only “during or following” a civil action under CERCLA § 106 or § 107, or following a settlement resolving CERCLA liability. *Cooper Industries, Inc. v. Aviall Services*, *Inc*., 543 U.S. 157, 166-68 (2004); *Guam v. United States*, 593 U.S. 310, 315-16 (2021). In a § 113(f) contribution action, the court allocates liability among PRPs “using such equitable factors as the court determines are appropriate.” 42 U.S.C. § 9613(f)(1); *NCR Corp. v. George A. Whiting Paper Co*., 768 F.3d 682, 689 (7th Cir. 2014).

Courts have emphasized the distinctness of the apportionment of divisible costs under §107(a) and the equitable allocation of costs under § 113(f). Apportionment is a liability-phase determination under § 107(a); it asks whether the environmental harm is divisible, so that each PRP bears responsibility only for the portion of the harm it caused. *Burlington Northern*, 556 U.S. at 614. The burden of proving divisibility falls on the defendant seeking to avoid joint and several liability. *Id*. Proving divisibility is a “high bar”; consequently, “[d]ivisibility is the exception … not the rule.” *Von Duprin,* 12 F.4th at 767; *United States v. Cap. Tax Corp.*, 545 F.3d 525, 535 (7th Cir. 2008). Allocation, on the other hand, is the process by which a court distributes common liability among PRPs. *Von Duprin*, 12 F.4th at 767. As the Seventh Circuit has explained: “To apportion is to request separate checks, with each party paying only for its own meal. To allocate is to take an unitemized bill and ask everyone to pay what is fair.” *Id*. (quoting *Yankee Gas Servs. Co. v. UGI Utilities, Inc.*, 852 F. Supp. 2d 229, 241-42 (D. Conn. 2012)).

The Seventh Circuit has been clear that the "choice" between § 107(a) and § 113(f) is nonvoluntary and dictated entirely by procedural posture, *NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d at 691. As the court in *Bankert* explained:

> Where a person has been subjected to a civil action under 42 U.S.C. §§ 9606 or 9607(a), he may attempt to recover his expenditures through a contribution suit under 42 U.S.C. § 9613(f)(1). Where a person has resolved his liability to the United States, or to a state, for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement, he may attempt to recover his expenditures in a contribution suit pursuant to 42 U.S.C. § 9613(f)(3)(B). If neither of those triggers has occurred, a plaintiff does not have a claim for contribution under CERCLA. That does not mean he has no remedy, however. Any time a person has incurred "necessary costs of response . . . consistent with the national contingency plan[,]" CERCLA provides for a § 9607(a)(4)(B) cost recovery action. These are the plain terms of the statute.

*Bernstein v. Bankert*, 733 F.3d 190, 202 (7th Cir. 2012).

As set forth below, the TP Complaint plausibly alleges claims for cost recovery under CERCLA § 107(a), declaratory relief under § 113(g)(2), and state law contribution.

## <u>ARGUMENT</u>

### I. THIRD-PARTY PLAINTIFFS PROPERLY SEEK APPROPRIATE REMEDIES UNDER CERCLA SECTIONS 107(a) AND 113(g).

TPDs first argue that Third-Party Plaintiffs seek "incompatible forms of relief that are mutually exclusive under CERCLA"; namely, asking the Court to declare TPDs jointly and severally liable pursuant to CERCLA § 107(a)(4)(B) in Count I, while requesting "that the Court 'determin[e] the percentage share of equitable responsibility attributable to each Third-Party Defendant' and allocate costs 'using such equitable factors as the Court deems appropriate)'" in Count II. (Br. at 5.) TPDs argue that seeking these forms of relief "under the <u>same claim</u>" is impermissible. *Id.* This argument fundamentally misconstrues Third-Party Plaintiffs' claims and the law.

Joint and several liability is "the norm for PRPs under § 107(a)." *Von Duprin LLC v. Major Holdings, LLC*, 12 F.4th 751, 759, 763 (7th Cir. 2021). The exception is for divisible liability, or apportionment, where liability is assigned according to the divisible portion of the underlying environmental harm each PRP caused. *Id.* Apportionment operates in a § 107(a) action only when the harm is divisible and is governed by principles of causation. *Id.* Section 107(a) requires the court to impose joint and several liability, unless the defendant demonstrates that a reasonable basis for apportionment exists. *Burlington Northern*, 556 U.S. at 614. Any decision by a plaintiff to demand less than the full cost from a defendant is purely voluntary and does not alter the nature of the § 107(a) claim or the defendant's statutory liability.

Here, Count I of the TP Complaint seeks cost recovery under § 107(a)(4)(B), including a determination that TPDs are jointly and severally liable for Third-Party Plaintiffs' past response costs. Count I does not seek an equitable allocation. Through Count II, a separate but complementary claim, Third-Party Plaintiffs seek a declaratory judgment under § 113(g)(2) establishing TPDs' liability for future response costs. Section 113(g)(2) expressly authorizes—and <u>requires</u>—declaratory judgments regarding liability for future response costs in any § 107 action. 42 U.S.C. § 9613(g)(2).

The claims therefore track the statutory framework: liability is sought under § 107(a), while the requested future-cost declaration is sought under § 113(g)(2). TPDs' assertion that Third-Party Plaintiffs cannot at this time bring a § 113(f) contribution claim, while correct, is irrelevant because Third-Party Plaintiffs have not brought or implied a § 113(f) contribution claim.

The source of TPDs' concern appears to stem from the second paragraph of TPDs' prayer for relief in Count II, asking the Court to declare "that, using such equitable factors as the Court deems appropriate, the Court has determined the percentage share of equitable responsibility

attributable to each Third-Party Defendant for the response costs….” (Br. at 5; TP Complaint at ¶ 67.) But TPDs misconstrue, or misunderstand, these claims and the requested relief.

Counts I and II both clearly request that the Court declare TPDs jointly and severally liable pursuant to CERCLA. But they do not necessarily ask the Court to order that TPDs pay Third-Party Plaintiff's 100% of *Third-Party Plaintiff's* response costs. Count I seeks an award of "an amount determined by the Court to satisfy the obligation of each Third-Party Defendant for all necessary response costs incurred and to be incurred by Third-Party Plaintiffs." This prayer for relief did not suggest how the Court would determine what the amount would be, and TPDs have raised no concern with it. In Count II, in addition to again asking that the Court declare TPDs jointly and severally liable, Third-Party Plaintiffs ask the Court to determine "the percentage share of equitable responsibility attributable to each" TPD "using such equitable factors as the Court deems appropriate." (TP Complaint at ¶ 67.)

TPDs' argument does not support dismissal of either claim. Third-Party Plaintiffs simply seek to circumscribe the amount of recovery it seeks from each TPD—*i.e.*, to seek only that amount that the Court determines reflects each TPDs' fair share.

But even setting aside that single sentence in Count II's prayer for relief, Third Party Plaintiffs have still stated cognizant claims because they plainly seek other authorized relief through Counts I and II. A party seeking a declaratory judgment must show that there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Hoffman v. Sumner*, 478 F. Supp. 2d 1024, 1029 (N.D. Ill. 2007) (quoting *In re VMS Sec. Litig.,* 103 F.3d 1317, 1327 (7th Cir. 1996)). And a court hearing a CERCLA cost recovery claim is *required* to issue a declaratory judgment. 42 U.S.C. § 9613(g)(2). TPDs do not dispute that relief is authorized.

Finally, even if there were any tension between the remedies sought in the TP Complaint—and there is not—Federal Rule of Civil Procedure 8(d)(2)-(3) expressly permits a party to plead claims in the alternative and to seek inconsistent remedies. Fed. R. Civ. P. 8(d)(2)-(3) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient…. A party may state as many separate claims or defenses as it has, regardless of consistency."). Because Third-Party Plaintiffs have clearly stated cognizant claims under the relevant provision of CERCLA, TPDs' argument on this basis should be rejected.

## II. THIRD PARTY PLAINTIFFS DO NOT SEEK AN "IMPLIED" § 113(f) CLAIM, AND TPDs' CITED CASES ARE INAPPLICABLE.

TPDs argue that Third-Party Plaintiffs have impermissibly "recast [their] claims as contribution" in Count II. (Br. at 6.) TPDs then rely on *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157 (2004) and related cases to argue that Plaintiffs cannot seek CERCLA contribution, "whether framed expressly under Count II or implied through its request for equitable allocation." (Br. at 7.) This argument fails because Third-Party Plaintiffs seek a declaration under § 113(g)(2), not contribution under § 113(f), and, as noted above, Third-Party Plaintiffs' reference to the Court's equitable powers in their prayers-for-relief was not intended to convert either CERCLA claim into a contribution claim.

### A. Third-Party Plaintiffs Seek a Declaration Under § 113(g)(2), Not Contribution Under § 113(f).

TPDs argue that Third-Party Plaintiffs are seeking an implied right to contribution under § 113(f). That is clearly untrue on the face of the TP Complaint. Third-Party Plaintiffs are seeking cost recovery under § 107(a) for past costs and a declaratory judgment under § 113(g)(2) for future costs—relief tied to § 107 liability, not a request for contribution under § 113(f). *See NCR Corp.*

*v. George A. Whiting Paper Co.*, 768 F.3d 682, 690 (7th Cir. 2014) (explaining the distinct roles of §§ 107(a) and 113(f)). Further, while Third-Party Plaintiffs allege state law contribution claims in the TP Complaint, those are wholly unrelated to CERCLA § 113(f).

TPDs in their Motion seem to conflate a claim under § 113(f) with a claim under § 113(g). To be clear, the TP Complaint's reference to § 113 is solely to the declaratory judgment right under § 113(g)(2), not to contribution. Section 113(g)(2) provides:

> In any [CERCLA § 107] action . . . the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages.

In other words, § 107(a) provides the initial authority for cost recovery, while § 113(g)(2) provides the Court's authority to enter a declaratory judgment concerning liability for future response costs in that § 107(a) action.

Further, TPDs' characterization of Third-Party Plaintiffs' theory as an "implied § 113(f) contribution right" is no longer a recognized concept within CERCLA. When CERCLA was enacted in 1980, courts inferred an implied right of contribution to give PRPs a mechanism to allocate costs. *Metro. Water Reclamation Dist. v. N. Am. Galvanizing & Coatings, Inc.*, 473 F.3d 824, 827-28 (7th Cir. 2007). But the 1986 SARA amendments replaced that judicially created right with the express right to contribution under § 113(f). *Id.* The Seventh Circuit held that a PRP that has not yet been "the subject of an action for damages or compliance under CERCLA" cannot seek contribution under § 113(f) but instead must bring a claim for cost recovery under § 107(a). *Id.* at 827-28, 832-35; *see also United States v. Atlantic Research Corp.*, 551 U.S. 128, 139-40 (2007). That is precisely what Third-Party Plaintiffs did in the TP Complaint.

### B. Third-Party Plaintiffs' Reference to Equitable Principles Was Not Intended and Should Not be Read to Convert Its Cost Recovery Claim Into a Contribution Claim.

As explained in Section I above, the sole intent of Third-Party Plaintiffs' reference to equitable principles in the prayer for relief in Count II was to limit their requested relief to only the amount that the Court determines to be applicable to TPDs. Third-Party Plaintiffs do not dispute that under § 107(a) they are *entitled* to recover all of their response costs, but it does not follow that they are *required* to do so. TPDs ask this Court to read such a requirement into the statute, but that reading is both absurd and unsupported. TPDs do not cite to—and Third-Party Plaintiffs are unaware of—any precedent for the suggestion that a § 107(a) claim must fail whenever a plaintiff asks for *too little*.

Similarly, asking the Court to determine which defendant should pay how much, after judging them both to be jointly and severally liable for the whole, does not convert Count II into a contribution claim—and it certainly does not support dismissing any claims.

## III. E.J. SPIRTAS GROUP IS A COVERED PERSON UNDER CERCLA § 107(a).

Next, TPDs argue that the TP Complaint "does not plausibly allege" that Spirtas Group is a covered person under CERCLA § 107(a). (Br. at 8.) This argument fails because the TP Complaint clearly alleges facts supporting Spirtas Group's liability under the CERCLA §§ 107(a)(2) and (a)(3).

CERCLA § 107(a) imposes liability on four categories of persons: (1) current owners and operators of a facility; (2) past owners and operators at the time of disposal; (3) persons who arranged for disposal or treatment of hazardous substances; and (4) transporters. 42 U.S.C. § 9607(a)(1)-(4). The TP Complaint alleges that Spirtas Group is liable as a person who arranged for disposal of hazardous substances at the Property, pursuant to § 107(a)(3), and/or a person who owned or operated the Property at the time of disposal, pursuant to § 107(a)(2), and it offers voluminous facts in support. (TP Complaint ¶ 60.)

The TP Complaint contains over 20 paragraphs, spanning four pages, dedicated to describing "Contamination Caused by Third-Party Defendants" after Spirtas Manitowoc acquired the Property. (TP Complaint ¶¶ 26 – 47.) For example, ¶ 35 alleges that an April 6, 2011, Action Memorandum from the United States Environmental Protection Agency ("U.S. EPA") "details activities by Third-Party Defendants that contributed to the condition of the Property." Those activities (including draining of transformers) and the resulting PCB contamination are described in U.S. EPA's Action Memorandum, attached to the TP Complaint as Exhibit 4, and summarized in TP Complaint ¶¶ 35-37. These allegations plainly apply to *both* TPDs, including Spirtas Group.

The TP Complaint also expressly alleges that Spirtas Group, itself, was the "property owner" at the time of these illegal discharges. For example, TP Complaint ¶ 39 alleges that U.S. EPA identified Spirtas Group as the "property owner" conducting demolition activities. Specifically, U.S. EPA's September 29, 2011, Final Removal Polrep ("POLREP #2"), which was also attached to the TP Complaint and summarized in TP Complaint ¶ 39, describes the Property as "slated for demolition by the property owner, EJ Spirtas Group, LLC, a . . . demolition company." (TP Complaint ¶ 39; Ex. 6.) And just one month earlier, U.S. EPA issued a CERCLA Removal Polrep known as "POLREP #1," describing the "illegal[]" draining of transformers and resulting spill of transformer oil. (TP Complaint ¶ 38.)

It is no wonder that the Wisconsin Department of Natural Resources ("WDNR") identified Spirtas Group as "the responsible party" for contamination at this Property. (TP Complaint ¶¶ 33-34; Ex. 3.) Specifically, on April 23, 2010, WDNR issued a Responsible Party letter addressed to Eric J. Spirtas, EJ Spirtas Group LLC, stating, "you, a member of E.J. Spirtas Manitowoc, LLC, purchased [the Property] from Mirro Building, LLC, therefore the Department considers you the responsible party for the environmental releases at the [Property]." *Id.* While this letter was issued

pursuant to Wisconsin law, not CERCLA, it demonstrates that WDNR identified Spirtas Group as a party who purchased the Property, making Spirtas Group an owner at the very time that the TP Complaint alleges discharges occurred.

If TPDs' defense is that both U.S. EPA and WDNR were mistaken in identifying Spirtas Group as an owner of the Property and that Spirtas Group did not otherwise operate the Property or arrange for the disposal of hazardous substances, those are factual disputes well beyond the scope of the pleadings and cannot be raised on a motion to dismiss. *See Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 372 (7th Cir. 1992) (courts reviewing a 12(b)(6) motion "accept[] as true all well-pleaded factual allegations and draw[] all reasonable inferences in favor of the plaintiff."); *City of Waukegan,* 587 F. Supp. 2d at 1006l (holding potential "evidentiary problem[s]" related to proving ownership were not "a reason to dismiss Waukegan's claim at the pleading stage."); *Lozar v. Birds Eye Foods, Inc*., 678 F. Supp. 2d 589, 607 n.5 (W.D. Mich. 2009) ("Any question about the [plaintiff's] ultimate ability to establish [defendant's] responsibility for the groundwater contamination itself does not subject their remediation/response-cost claim to 12(b)(6) dismissal.").

In addition to disputing the facts, TPDs also attack a legal strawman—citing the Supreme Court's holding in *United States v. Bestfoods*, 524 U.S. 51 (1998) as support for the proposition that "corporate affiliation alone does not create CERCLA liability." (Br. at 8). However, Third-Party Plaintiffs are not alleging that corporate affiliation alone creates CERCLA liability. To the contrary, as detailed above, the TP Complaint alleges facts specific to Spirtas Group's status (as an owner or operator) and actions to establish that Spirtas Group is a CERCLA liable party.

In sum, these allegations, which are taken as true and with all reasonable inferences drawn in Third-Party Plaintiffs' favor as required at the Rule 12(b)(6) stage, plausibly state that Spirtas

Group is a covered person under CERCLA § 107(a). TPDs' argument to the contrary improperly asks this Court to disregard Third-Party Plaintiffs' factual allegations and to weigh evidence—tasks wholly inappropriate on a motion to dismiss. *City of Waukegan,*, 587 F. Supp. 2d at 1007–08 (N.D. Ill. 2008) (holding complaint sufficiently alleged operator liability where "Waukegan… alleged that National Gypsum was responsible for dredging activities that caused a release of PCB-contaminated sediment within the Facility" and other determinations would "require[] an examination of the facts that is more appropriately done at either summary judgment or trial.").

## IV. TPDs' REMAINING ARGUMENTS IMPROPERLY DISPUTE FACTS, CONTRARY TO RULE 12(b)(6).

In their fourth and fifth arguments, TPDs argue that Third-Party Plaintiffs failed to adequately plead causation under CERCLA and failed to prove that TPDs "contributed to contamination," without which "there could not be joint liability for which contribution could be sought" under state law. (Br. at 9.) They further argue that any costs Third-Party Plaintiffs incurred after the City of Manitowoc acquired the Property "cannot be attributed to Third-Party Defendants." TPDs misconstrue Third-Party Plaintiffs' allegations and the law.

### A. The TP Complaint Alleges TPDs Caused or Contributed to Contamination at the Property, Establishing Factual Predicates for Both CERCLA Liability and State Law Contribution.

Contrary to TPDs' argument, the TP Complaint connects Third-Party Plaintiffs' response costs to TPDs' conduct and clearly alleges that TPDs contributed to contamination at the Property. For example, the TP Complaint alleges the following:

1. Hazardous substances, including PCBs, were discharged to the environment at the Property due to TPDs' acts and omissions (TP Complaint ¶¶ 5, 47);
2. Following Spirtas Manitowoc's acquisition of the Property, the condition of the Site "dramatically declined" (TP Complaint ¶ 30);

3. A September 2, 2008, Site Reconnaissance Memorandum performed by STS on behalf of the City, attached as Exhibit 2, detailed a site visit during TPDs' period of ownership and summarized items which STS opined required immediate attention. Those items included "several 55-gallon drums of apparent PCB containing transformer fluid"; "several piles of building debris" inside a building, including "debris likely contain[ing] asbestos containing materials (ACM)"; and "twenty to thirty containers with unknown fluids." (TP Complaint ¶ 31; Ex. 2);

4. A U.S. EPA Action Memorandum described

> activities by Third-Party Defendants that contributed to the condition of the Property: In October 2010, drums were discovered by a contractor conducting an EPA Targeted Brownfields Assessment (TBA) in the [buildings at the Property]. The drums were not present during previous (2006 and 2009) investigations at the [Property]. Based on the location of the majority of the drums, it appeared that transformers at the facility had been drained into the containers. Staining observed on the floor surrounding the transformers intimated that oil had been spilled when the transformers were emptied.

(TP Complaint ¶¶ 35-37; Ex. 4);

5. U.S. EPA confirmed that PCB contamination resulted from transformers being drained and drums being abandoned and spilled during Spirtas Manitowoc's ownership of the Property (TP Complaint ¶¶ 37-38; Exs. 4-5); and

6. Third-Party Plaintiffs have incurred over $700,000 in investigation costs related to the Property to date, including investigation of hazardous substances released as a result of Third-Party TPDs' acts and omissions (TP Complaint ¶¶ 51-52).

These are not "threadbare recitals" or "conclusory statements." They detail specific acts—draining PCB-containing transformers, abandoning drums of PCB-contaminated waste, and conducting improper demolition activities—that caused specific environmental harm requiring Third-Party Plaintiffs to incur investigation costs. Reports documenting these actions in detail were also attached to the TP Complaint, giving TPDs full notice of the actions alleged. *See Williamson v. Curran,* 714 F.3d 432, 436 (7th Cir. 2013) ("a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice.").

These allegations clearly allege joint liability for which contribution could be sought pursuant to Third Party Plaintiffs' state law contribution claims (Count III and Count IV). And they similarly establish the basis for concluding that TPDs are liable under CERCLA.

Notably, CERCLA does not require a plaintiff to parse out each dollar of investigation cost at the pleading stage; a complaint needs only to contain allegations sufficient to show the plaintiff has incurred response costs related to releases at the applicable site. *City of Waukegan*, 587 F. Supp. 2d at 1008 ("Waukegan alleges that the release of PCBs in the Facility 'have caused the City to incur 'response costs' within the meaning and scope of CERCLA.... The City has incurred, and will continue to incur, response costs in connection with the investigation of the PCBs at the Facility and potential remedial actions....' … These allegations, under a notice pleading standard, are sufficient to state a CERCLA claim."); *see also Lozar*, 678 F. Supp. 2d at 594 (W.D. Mich. 2009) (holding complaint provided requisite allegations for CERCLA cost-recovery claim where it alleged releases and resulting response costs).

Moreover, Third-Party Plaintiffs need not connect specific, dollar-by-dollar costs to specific releases to establish liability under CERCLA § 107(a). *See Premium Plastics v. LaSalle Nat. Bank,* 904 F. Supp. 809, 815 (N.D. Ill. 1995) ("a CERCLA plaintiff—government or private—need not prove a connection between the defendant's waste and the plaintiff's response costs."). Such facts would be relevant, if at all, only if TPDs allege divisibility—an assertion that TPDs would have the burden to raise and to prove. *See Von Duprin,* 12 F.4th at 766 (party asserting divisibility bears burden of proving that a reasonable basis for apportionment exists); *New York v. Next Millennium Realty, LLC*, 160 F. Supp. 3d 485, 512 (E.D.N.Y. 2016) ("Though causation is not an element of a CERCLA plaintiff's case, a CERCLA defendant asserting the divisibility defense may show that it caused only some part of the contamination, and how much.").

Consequently, TPDs' arguments do not support dismissal of the TP Complaint.

### B. TPDs Incorrectly Argue That CERCLA Absolves Them from Costs Incurred After the City Acquired the Property.

TPDs argue that Third-Party Plaintiffs cannot recover costs incurred after the City's 2016 acquisition of the Property. This argument misconstrues Third-Party Plaintiffs' allegations and the law.

Third-Party Plaintiffs seek to recover their own investigation costs—over $700,000—incurred in response to the September 2018 WDNR Responsible Party Letter under CERCLA. As explained above, these costs were incurred at least in part because of disposal of hazardous substances TPDs arranged, or that otherwise occurred during their ownership and operation of the Property. Because remediation necessarily can happen only *after* there has been a release of hazardous substances, the causation inquiry under CERCLA examines what caused the plaintiff to incur response costs, not when those costs were incurred relative to property transfers. *See e.g. Nat'l Acceptance Co. of Am. v. Regal Prods., Inc.*, 838 F. Supp. 1315, 1319 (E.D. Wis. 1993) (applying Section 107 to a former owner of a property because "[u]nder § 9607(a)(2), a responsible person is 'any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of.'").

CERCLA imposes strict, joint, and several liability on responsible parties. 42 U.S.C. § 9607(a)(2). A subsequent property transfer does not eliminate a prior owner or operator's CERCLA liability for contamination caused during its period of ownership or operation. *See* 42 U.S.C. § 9607(a)(2). And, to the extent the TPDs argue costs incurred after the City acquired the Property "were incurred as a result of the City's own decisions and actions, not as a result of acts or omissions by E.J. Spirtas Manitowoc during its prior ownership," these are factual disputes that have no place in a Rule 12(b)(6) motion. (Br. at 12).

## CONCLUSION

For the foregoing reasons, Third-Party Plaintiffs Newell Brands Inc. and Newell Operating Company respectfully request that the Court deny TPDs' Motion to Dismiss the Third-Party Complaint in its entirety.

Dated: September 18, 2026

Respectfully submitted,

By:/s/ Ann H. MacDonald

Ann H. MacDonald
Mariam Weber
Meera S. Gorjala
ARENTFOX SCHIFF LLP
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
Tel: (312) 258-5500

Andrew N. Sawula
ARENTFOX SCHIFF LLP
One Westminster Place, Suite 200
Lake Forest, IL 60045
Tel: (847) 295-9200

Jodi Arndt Labs
LAW FIRM OF CONWAY, OLEJNICZAK & JERRY, S.C.
231 South Adams Street
Green Bay, Wisconsin 54305
Tel: (920) 437-0476

*Counsel for Third-Party Plaintiffs Newell Brands Inc. and Newell Operating Company*

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

/s/ Ann H. MacDonald
Attorney for Third-Party Plaintiffs